**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000441
12-SEP-2018
08:14 AM**

NO. CAAP-16-0000441

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF R CHILDREN

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 14-00025)

MEMORANDUM OPINION
(By: Ginoza, C.J., and Fujise and Reifurth, JJ.)

Father-Appellant appeals from the "Order Terminating Parental Rights of Father [] and Order Regarding Insufficient Basis, Currently, to Terminate Parental Rights of Mother [], filed on May 23, 2016 ("Order Terminating Parental Rights") in the Family Court of the First Circuit ("Family Court"),[1] which terminated Father's, but not Mother's, parental rights to their child, KK.

The Family Court concluded that Petitioner-Appellee State of Hawai'i, Department of Human Services ("DHS") failed to prove by clear and convincing evidence that Mother was not presently willing and able to provide KK with a safe family home, even with the assistance of a service plan, or that it was not reasonably foreseeable that Mother would become willing and able to provide KK with a safe family home, even with the assistance of a service plan, within a reasonable period of time. The Family Court also held that the proposed permanent plan of adoption was not in the best interest of KK.

---

[1]    The Honorable Steven M. Nakashima presided.

However, the Family Court found that DHS had proven by clear and convincing evidence that Father was not presently willing and able to provide KK with a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable that Father would become willing and able to provide KK with a safe family home, even with the assistance of a service plan, within a reasonable period of time. The Family Court further found that it was in KK's best interest that Father's parental rights be terminated.

On appeal, Father specifically challenges FOFs 16, 17, 23, 76, 81, 82, 83, and 86 and COLs 7, 8, 9, 10, 11, and 14. Father contends that: (A) the failure of the Family Court to terminate both Mother's and Father's parental rights demonstrates that the statutory provisions of Hawaii Revised Statutes ("HRS") § 587A-33 were not followed; and (B) there was not clear and convincing evidence that Father was not willing and able to provide a safe family home to KK or that it was not reasonably foreseeable that Father would become willing and able to provide a safe family home to KK, with the assistance of a service plan, within a reasonable period of time.

For the reasons explained below, we affirm.

I. BACKGROUND

Mother has six children: NR, AR, KR1, JR, KR2, and KK. Adult JR is the father of NR, AR, KR1, JR, and KR2. Father is the father of KK. On February 18, 2014, DHS filed a Petition for Family Supervision over NR, AR, JR, KR2, and KK (collectively, "Children"), but not KR1 who was already in the care of his maternal grandparents. Father's parental rights to another child with a different mother were terminated in a prior proceeding, FC-S No. 05-10503. DHS alleged that the Children were subject to harm or threatened harm by Father. On August 29, 2013, DHS was informed that Father kicked JR in the chest causing JR pain and abrasions and then punched Mother in the head when she attempted to pick up JR. Father was arrested, but Mother failed to obtain a temporary restraining order ("TRO") against Father so the case was returned from Voluntary Case Management due to non-compliance

2

in December 2013. DHS alleged that Father used alcohol, marijuana and crystal methamphetamine. In February 2014, Mother obtained a TRO against Father in FC-DA No. 14-1-0309 and a hearing was scheduled for February 24, 2014. DHS believed that Mother could not provide sufficient supervision of the Children to protect them from substantial or imminent harm, there was an extensive history of domestic violence in Mother's and Father's relationship, Adult JR was also physically abusive to Mother, Father and Adult JR had convictions for abuse of a household member, and Mother lacked the capacity to protect the Children.

In an order filed on February 24, 2014, Mother and Father were ordered to follow a service plan dated February 18, 2014 ("February 2014 Service Plan"). The February 2014 Service Plan required Mother to participate in a psychological evaluation, domestic violence and anger management education, parenting and individual counseling, and enhanced healthy start services. Father was required to participate in a substance abuse assessment and recommended treatment; random drug screening when instructed; domestic violence and anger management education; a psychological evaluation; and parenting, individual, couples and domestic violence counseling.

An April 7, 2014 assessment report from Hina Mauka indicated that Father tested presumptive positive for methamphetamine and admitted that his last use of methamphetamine was on March 29, 2014, several days before the assessment and drug screening on April 1, 2014.

On April 11, 2014, DHS filed a Motion for Immediate Review to Change Family Supervision to Foster Custody. In an April 7, 2014 Short Report to Court, DHS alleged that the agreed-upon plan for maternal grandmother to move in with Mother was not being followed because Mother was evicted from her apartment, so Mother and the Children moved in with maternal grandmother and step-grandfather instead. However, maternal step-grandfather had a prior conviction for sexual assault and DHS was concerned about leaving the Children alone with step-grandfather. Mother continued to have contact with Father and forced all of the Children to go with her when she met with Father. The Children

stated that they did not feel safe when around Father. On April 14, 2014, family supervision was revoked and DHS was awarded temporary foster custody over the Children.

In an order filed on April 24, 2014, the Family Court found that Adult JR made progress but Mother and Father made only minimal progress in resolving the issues that necessitated placement. Mother and Father stipulated to follow a modified service plan dated April 10, 2014 ("April 2014 Service Plan"). The April 2014 Service Plan required Mother to participate in a substance abuse assessment and recommended treatment and to do random drug screening in addition to the tasks required in the February 2014 Service Plan. The April 2014 Service Plan added intensive outpatient care for substance abuse for Father in addition to the prior required services in the February 2014 Service Plan.[2]

In a Safe Family Home Report, dated September 5, 2014, DHS reported that Father was making minimal progress in services but he completed a psychological evaluation and substance abuse assessment. Father tested positive three times for drugs and had six no shows which resulted in removal from the monitoring program. DHS treats any no show for a drug screen as a presumptive positive result. Father also attended parenting class but was removed after missing four classes. DHS reported that Father had ongoing domestic violence and anger management issues and failed to address his domestic violence issues.

In an order dated October 9, 2014, the Family Court found that Adult JR and Mother had made progress in resolving the problems that necessitated placement, but that Father had made minimal progress. Therefore, Mother and Father were ordered to follow a service plan dated September 5, 2014 ("September 2014 Service Plan"). The September 2014 Service Plan was similar to the April 2014 Service Plan.

In an order dated November 10, 2014, the Family Court ordered that Mother and Father follow a service plan, dated

---

[2] We deem the references to Adult JR in the "Expected Changes" detail of each task in the section of the April 2014 Service Plan that pertains to Father to be typographical errors.

4

October 20, 2014 ("October 2014 Service Plan") which was fairly similar to the September 2014 Service Plan.

In a Report Update to Court dated February 4, 2015, DHS reported that Father's drug test on December 2, 2014, was positive for methamphetamine, Father failed to show up for a drug test on December 8, 2014 which was a presumptive positive drug test result, Father tested positive for methamphetamine on December 22, 2014, and on January 3, 2015, Father again failed to show up for a drug test which is a presumptive positive drug test result. DHS stated that it did not believe that Mother and Father were demonstrating change in domestic violence since there were numerous reports to DHS of an argument between Mother and Father at Tamura's Supermarket in Waianae.

In a Short Report to Court dated May 25, 2015, DHS reported that Father was a no show for drug testing on March 3, April 26, and May 16, 2015.

On July 23, 2015, DHS filed a motion to terminate the parental rights of Mother and Father and award permanent custody of KK to the DHS with the proposed permanent plan calling for adoption of KK.

In an order dated August 10, 2015, the Family Court ordered Mother and Father to follow the service plan dated July 10, 2015, which was similar to the October 2014 Service Plan and indicates the status of each service.

Hina Mauka drug testing reports indicated that Father was a no-show on August 21 and 25, 2015, and was removed from the program. Father was re-referred for monitoring services on September 1, 2015, but was a no-show on September 27 and October 3, 2015 and was again terminated from the program. Meanwhile, a letter from Child & Family Service dated September 21, 2015, indicated that they were closing Father's case for domestic violence services due to his lack of participation. Furthermore, after being re-referred for monitoring services on November 16, 2015, a Hina Mauka drug test report indicated that on November 18, 2015, Father was a no-show.

A Safe Family Home Report dated November 23, 2015, stated that Father failed to enroll himself in outpatient

5

educational classes as recommended in his substance abuse assessment and it was unclear that Father showed insight into his domestic violence issues because of his ongoing off and on relationship with Mother and nonparticipation after re-referral for services.

On March 8, 2016, the Family Court began hearings on the motion to terminate parental rights. Annette Shanks testified that she was a social worker for DHS. Shanks was first assigned to KK's case on October 3, 2014. Shanks stated that Father was re-referred for drug monitoring services but was recently removed from it on March 4, 2016, for two no-shows.

Shanks testified that DHS does not believe that Mother or Father can provide a safe family home even with the assistance of a service plan. Shanks stated that Mother had a history of domestic violence with a conviction for abuse of a family or household member, was abused by her stepfather, and witnessed abuse of her own mother. Father was also convicted of abuse of a family or household member. He also used alcohol, marijuana, and crystal methamphetamine. In addition, Father also had domestic violence in his past involving his four other children. DHS has safety concerns about Father because of his noncompliance with the substance abuse assessment recommendation for outpatient education classes, inconsistent sobriety, and anger issues. Father had outbursts during meetings with Shanks when she reminded him about his services and about him being inconsistent with services, thus, DHS believed that there was some anger issues that need to be resolved. Father told Shanks that he did not want to participate in domestic violence services because he needed to work and support his children. Father also did not complete anger management classes. Father reported that he had a medical issue so he could not participate in the drug testing but failed to provide documentation of a medical issue that would have prevented him from participating in drug testing. Shanks reminded Father every month from 2014 to 2016 about classes, and despite agreeing to participate, Father did not do so. Father completed individual counseling, but couples counseling was incomplete due to domestic violence issues. It was Shanks'

opinion that Father was not presently willing and able to provide a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable that he would become willing and able to provide a safe family home, even with the assistance of a service plan, because Father was not compliant with recommendations made by DHS and had not shown interest in resolving the safety factors that DHS had concerns about.

In FOF 95, the Family Court found that Shanks was credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." *Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (internal quotation marks and citation omitted).

On May 23, 2016, the Family Court entered its Order Terminating Parental Rights, which terminated Father's parental rights to KK under HRS § 587A-33(a), but did not terminate Mother's parental rights to KK and found that the permanent plan for adoption was not in the best interest of the child. On December 1, 2016, the Family Court issued its Findings of Fact and Conclusions of Law.

II. STANDARD OF REVIEW

*Family Court Decisions*

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)).

*Family Court's Findings of Fact and Conclusions of Law*

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and

7

probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's COLs are reviewed on appeal *de novo,* under the right/wrong standard. COLs, consequently, are "not binding upon an appellate court and are freely reviewable for their correctness.["]

. . . .

Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

*Id.* (quoting *Doe,* 95 Hawai'i at 190, 20 P.3d at 623).

III. DISCUSSION

A. An award of permanent custody under HRS section 587A-33 involves essentially the same criteria and material elements as termination of parental rights under HRS section 571-61(b)(1)(E).

Father contends that since the Family Court held that the permanent plan was not in the best interest of KK and since Mother's parental rights were not terminated, his parental rights may not be terminated pursuant to HRS § 587A-33 (Supp. 2015).[3/]

HRS § 587A-33 states in relevant part:

**Termination of parental rights hearing.** (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:

(1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family

---

[3/] The Family Court concluded differently, holding that:

[T]he parental rights of "Parent 1" can be terminated where there is clear and convincing evidence supporting the termination of Parent 1's parental rights, while at the same time, the parental rights of "Parent 2" could remain intact because there is insufficient evidence to support the termination of Parent 2's parental rights.

The Family Court noted that Father argued that "if Mother's parental rights were not terminated then Father's parental rights should likewise not be terminated," but "no one addressed the legal issue of whether parental rights may be terminated individually." The court explained that it would have welcomed the opportunity to consider such caselaw or statutory analysis, it had explained its analysis "on numerous occasions" to the parties and that, while "statements have been made that 'that's not how things are done,' no legal basis, caselaw or statutory, has ever been presented . . . to support the position that termination of parental rights can only take place for both parents or not at all."

home, even with the assistance of a service plan;

(2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care;

(3) The proposed permanent plan is in the best interests of the child.  In reaching this determination, the court shall:

 (A) Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and

 (B) Give greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care; and

(4) The child consents to the permanent plan if the child is at least fourteen years old, unless the court consults with the child in camera and finds that it is in the best interest of the child to proceed without the child's consent.

 (b) If the court determines that the criteria set forth in subsection (a) are established by clear and convincing evidence and the goal of the permanent plan is for the child to be adopted or remain in permanent custody, the court shall order:

(1) That the child's parent's parental rights be terminated;

(2) Termination of the existing service plan and revocation of the prior award of foster custody;

(3) That permanent custody of the child be awarded to an appropriate authorized agency;

(4) An appropriate permanent plan; and

(5) The entry of any other orders the court deems to be in the best interests of the child, including restricting or excluding unnecessary parties from participating in adoption or other subsequent proceedings.

 . . . .

 (h) If the court determines that the criteria set forth in subsection (a) are not established by clear and convincing evidence, the court shall order:

(1) The preparation of a plan to achieve permanency for the child;

(2)     The entry of any orders that the court deems to be in the best interests of the child;

(3)     A periodic review hearing to be held within six months after the date of the last permanency hearing; and

(4)     A permanency hearing to be held within twelve months of the date of the last permanency hearing.

A permanent plan shall "[s]tate whether the permanency goal for the child will be achieved through adoption, legal guardianship, or permanent custody[.]" Haw. Rev. Stat. § 587A-32(a)(1) (Supp. 2015). In this case, the permanent plan specified adoption as the permanent goal.

We agree that if all of the criteria under HRS section 587A-33(a) are not met, then HRS section 587A-33(b) provides no basis for terminating Father's parental rights. Here, however, the termination criteria under chapter 587 (the predecessor chapter to 587A) and HRS section 571-61(b)(1)(E) are "essentially the same." *In re Male Child Born on May 27, 1983*, 8 Haw. App. 66, 72, 793 P.2d 669, 672 (1990). Furthermore, the Hawai'i Supreme Court has held that chapter 587 should be liberally construed to serve the best interest of the child. *In re Doe*, 84 Hawai'i 41, 51-52, 928 P.2d 883, 893-94 (1996).

The Child Protective Act was first enacted in 1983 by Act 171 and was codified as HRS chapter 587. 1983 Haw. Sess. Laws Act 171, at 320-45. In 1986, Act 316 modified HRS chapter 587 by enacting a new statutory provision, HRS section 587-73. 1986 Haw. Sess. Laws Act 316, §30, at 662-64.

The legislative history of Act 316 indicates that Act 316 was:

> **to provide for timely permanent planning by incorporating in the Child Protective Act certain provisions of the termination of parental rights statute (chapter 571, part VI, HRS)**, the adoption statute (chapter 578, HRS), and the guardianship statute (chapter 560, part 4, HRS). Under present law, the required use of these separate proceedings has resulted in confusion and unnecessary delays for children and their families.

H. Stand. Comm. Rep. No. 236-86, in 1986 House Journal, at 1088 (emphasis added).

The legislative history is clear that HRS chapter 587 was not intended to displace the provisions of HRS chapter 571,

but rather to incorporate its provisions into a unified proceeding. S. Stand. Comm. Rep. No. 537-86, in 1986 Senate Journal, at 1023. In *In re Doe*, 84 Hawai'i 41, 51-52, 928 P.2d 883, 893-94 (1996), the supreme court recognized that HRS chapters 571 and 587 are not mutually exclusive by stating, "It would be absurd, therefore, to construe either chapter as implicitly limiting the ability of the family court to proceed under the other chapter." "Simply because an action is initiated as a chapter 571 proceeding should not preclude or limit the family court from addressing problems perceived as arising under chapter 587." *Id.* at 52, 928 P.2d at 894. The Family Court may take action under HRS chapter 587 regardless of whether the action was initiated under HRS chapter 571 or a formal petition pursuant to HRS chapter 587. *Id.*

HRS section 571-61(b)(1)(E) provides that "[t]he family courts may [involuntarily] terminate the parental rights in respect to any child as to any legal parent . . . [w]hose child has been removed from the parent's physical custody pursuant to legally authorized judicial action under section 571-11(9), and who is found to be unable to provide now and in the foreseeable future the care necessary for the well-being of the child[.]" The family court has exclusive original jurisdiction in proceedings "[f]or the protection of any child under chapter 587A[.]" Haw. Rev. Stat. § 571-11(9) (Supp. 2015).

In *In re Male Child Born on May 27, 1983*, 8 Haw. App. 66, 72, 793 P.2d 669, 672 (1990), this court held that:

> A comparison reveals that an award of permanent custody under HRS chapter 587 (Supp. 1989) involves essentially the same criteria and material elements as a termination of parental rights under HRS § 571-61(b)(1)(E). That is why HRS § 571-61(b)(1)(E) authorizes the termination of parental rights in most cases where the HRS § 587-73 criteria for the award of permanent custody has been satisfied. The only difference is that HRS § 587-73(a) authorizes the award of permanent custody when the child's family is either unwilling or unable to provide the child with a safe family home, whereas HRS § 571-61(b)(1)(E) authorizes the termination of parental rights when the parent is unable to provide the care necessary for the well-being of the child.

Thus, under HRS section 571-61(b)(1)(E) parental rights of only one parent may be terminated without regard to a permanent plan.

In 2010, Act 135 repealed HRS chapter 587 and enacted HRS chapter 587A. 2010 Haw. Sess. Laws Act 135, § 1 at 282-311. The legislative history of Act 135 indicates that the "new Child Protective Act," "rewrites and reorganizes chapter 587, Hawaii Revised Statutes, to make the new child protective provisions more understandable to people who practice in this area of law on a regular basis, those who may be new to this area of law, and those who may not have legal representation." S. Stand. Comm. Rep. No. 2613, in 2010 Senate Journal, at 1045. Thus, HRS chapter 587A was a re-enactment of HRS chapter 587 and, therefore, the reasoning of *In re Doe* should also apply to HRS chapter 587A, that HRS chapters 571 and 587A are not mutually exclusive, rather they provide the Family Court with the authority to address issues whether they arise under HRS chapters 571 or 587A.

HRS section 587A-33 is a substantial re-enactment of HRS section 587-73. Thus, the reasoning of *In re Male Child* applies here as well. HRS section 587A-33(a) allows for the termination of parental rights when a parent is not willing and able to provide a safe family home and it is not reasonably foreseeable that a parent will become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, and a permanent plan is in the best interest of the child. However, HRS section 571-61(b)(1)(E) also allows for the termination of only one parent's parental rights upon a finding that a parent is unable to provide now and in the forseeable future the care necessary for the well-being of the child.

The Family Court in this case found that Father was not willing and able to provide a safe family home and that it was not reasonably foreseeable that Father would become willing and able to provide a safe family home for KK, even with the assistance of a service plan, within a reasonable period of time. Having met the standard necessary for termination under HRS chapter 587A, irrespective of whether termination of one of two parents' rights is permissible under HRS section 587A-33(b), termination of Father's parental right is permissible under HRS

12

section 571-61(b)(1)(E). *See In re Doe*, 84 Hawaiʻi 41, 51-52, 928 P.2d 883, 893-94.

> B.  Substantial evidence was presented that Father was not willing and able to provide a safe family home.

Contrary to Father's claim, and in light of the evidence introduced, including Father's history of physical, drug, and alcohol abuse; lack of participation in domestic violence services, anger management classes, and couples counseling; multiple drug monitoring no-shows; and evidence of anger issues, there was substantial evidence that Father was not willing and able to provide a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable that Father would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from KK's date of entry into foster care on April 24, 2014.

## IV.  CONCLUSION

The Order Terminating Parental Rights, filed on May 23, 2016, in the Family Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, September 12, 2018.

On the briefs:

Randal I. Shintani,
for Father-Appellant.

Ian T. Tsuda and
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee,
Department of Human Services.

Makia Minerbi and
Daniel Pollard
(Legal Aid Society of Hawaii)
Guardian Ad Litem-Appellee

Chief Judge

Associate Judge

Associate Judge

13